FILED
2015 Jun-17 AM 10:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| REGINA MENDEZ,           ) | |
|                          ) | |
|     Plaintiff     ) | |
|                          ) | |
| vs.                      ) | Case No. 5:14-cv-01136-HGD |
|                          ) | |
| WALGREEN COMPANY,        ) | |
|                          ) | |
|     Defendant     ) | |

## **MEMORANDUM OPINION**

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant. (Doc. 6). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Doc. 14). Plaintiff in this matter, Regina Mendez, brought this action alleging that defendant, Walgreen Company (Walgreen's), is liable to her for negligence (Count One) and wantonness (Count Two), which resulted in injury to plaintiff when she slipped and fell on a wet floor inside defendant's business. (Doc. 1-1, Complaint). Plaintiff filed a response to defendant's motion for summary judgment. (Doc. 9). This motion is now ready for disposition.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Defendant, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A genuine issue of material fact is shown when the non-moving party produces evidence so that a reasonable factfinder could return a verdict in her favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In reviewing whether the non-moving party has met her burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d

994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted). However, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla of evidence" in support of the non-moving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## BACKGROUND INFORMATION

On the date of the event made the basis for this action, September 15, 2011, plaintiff went to Walgreen's to buy some cigarettes at around 6:00 p.m. (Doc. 6-2, Plaintiff's Depo., at 54-56). It was raining lightly, or "drizzling," at the time plaintiff entered the store. (*Id.* at 54, 65). She was driven to the store by her husband who let her out directly in front of the entrance. He remained in front of the store. (*Id.* at 59-60). There are twin doors on the front of the store, one on the left and one on the right. The doors are separated from each other by a few feet. Initially, plaintiff entered the store through the door on the right (as faced from the outside of the store). (*Id.* at 58). Just inside each door was a small mat placed on the floor. Another larger mat was on the floor just beyond these two mats. However, it was placed such that it would be walked upon only by someone entering through door on the right. (Doc. 6-3, Photographs A-C).

Once inside the store, plaintiff realized that she did not have enough money for her cigarettes and she left to go back to her vehicle to get more money. (*Id.* at 58-59). When she re-entered the store, plaintiff came through the door on the left. (Doc. 6-2, Plaintiff's Depo., at 60-61). When she stepped off the single mat in front of that door onto the floor, plaintiff's foot slid forward and she fell. (Doc. 6-3, Photographs E-F and video; Doc. 6-2, Plaintiff's Depo., at 87). Plaintiff was looking straight ahead and was not looking down at the time of her fall. (Doc. 6-2, Plaintiff's Depo., at 66).

Plaintiff did not see any water on the floor before she fell. However, she asserts that the floor was wet at the time of her fall. When asked how she knew this, plaintiff stated, "[b]ecause my butt was wet." Plaintiff later stated that she did not recall whether she looked to see if there was water on the floor after she got up after her fall. In this regard, the following exchange occurred during her deposition:

> Q. Did you at any time see any water on the floor there at any time?
>
> A. I don't know. I mean, I know when I left I noticed my butt was wet. That's how I knew that there was water – I don't recall. I don't – I don't recall. I don't remember.
>
> Q. You can't testify that you had seen any water on the floor there at any time, then, is that correct?
>
> A. I don't remember.

(Doc. 6-2, Plaintiff's Depo., at 67-68).

Plaintiff also did not recall seeing any dirt or debris on the floor at the time of her fall. (*Id.* at 69-70). According to plaintiff, the large mat did not contribute to her fall. (*Id.* at 90). Plaintiff testified that her husband, who observed her fall and came into the store immediately afterward, did not tell her he saw anything on the floor. (*Id.* at 71-72). Plaintiff also testified that her daughter, who also came into the store immediately after plaintiff's fall, said that she did not see or notice anything. (*Id.* at 72). Plaintiff has returned to this store once or twice since her fall but has not had any discussions with anyone concerning how the fall may have happened. (*Id.* at 94).

## DISCUSSION

### A. Negligence

"In order to prove negligence, a plaintiff must show that the defendant breached an existing duty, causing damage to the plaintiff." *Landreau v. Wal-Mart Stores, Inc.*, 75 F.Supp.2d 1318, 1321 (M.D.Ala. 1999). In other words, a negligence claim under Alabama law has four elements: duty, breach, causation and damages. *Palmer v. Infosys Techs. Ltd, Inc.*, 888 F.Supp.2d 1248, 1255 (M.D.Ala. 2012) (citing *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So.2d 665, 679 (Ala. 2001)). Where, as here, the plaintiff is a store customer and, thus, a business invitee, the defendant owes her a duty to exercise reasonable care in maintaining its premises

> ["]in a reasonably safe condition." *Bishop v. South*, 642 So.2d 442, 445 (Ala. 1994). This duty requires [the defendant] to "warn of hidden defects and dangers that are known to it, but that are unknown or hidden to the invitee." *Raspilair v. Bruno's Food Stores, Inc.*, 514 So.2d 1022, 1024 (Ala. 1987). Generally, though, this duty does not make the invitor liable "for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care." *Quillen v. Quillen*, 388 So.2d 985, 989 (Ala. 1980).

*Landreau*, 75 F.Supp.2d at 1321-22 (alterations supplied).

The parties assume that the foreign substance at issue in this case was tracked-in rain water. Plaintiff asserts that there is a factual question regarding whether the store should have taken more affirmative measures to prevent her fall. According to plaintiff, the evidence reflects that the store employees knew of water in the floor prior to plaintiff's entry; had placed mats in front of the doors over the tile floor which, in her opinion, did not adequately cover the area where the water was tracked in; did not have a warning sign anywhere near the area where plaintiff fell; and she fell just as she stepped off the mat on her way into the store. (Doc. 9, Plaintiff's Brief, at 13).

Alabama law is well established that rain water cases are unequivocally distinct from other slip-and-fall cases. *See Gulas v. Ratliff*, 283 Ala. 299, 216 So.2d 278, 281 (1968) ("A fall caused by snow or rain is distinguishable from a fall resulting from some other object as is usual in a slip and fall case."). The testimony reflects that it

was a rainy day and that plaintiff was aware that it had been raining. This is one of the reasons why rain-caused slip-and-fall is different from a run-of-the-mill slip-and-fall case. Despite plaintiff's claim that Walgreen's had superior knowledge of the danger of wet floors that existed on the date of her fall, generally, everyone is aware that, on rainy days, water splashes in and people track water inside of businesses. Thus, business invitees are aware or should be aware that, if they enter a business on a rainy day, the floor could be wet and slippery. *See Ex parte Neese*, 819 So.2d 584, 590 (Ala. 2001) (location of door mat coupled with being wet from the rain was obvious to the plaintiff); *Shelton v. Boston Fin., Inc.*, 638 So.2d 824, 825 (Ala. 1994) (reasonable person would be expected to realize that rain would cause grass to become slippery); *Hines v. Hardy*, 567 So.2d 1283, 1284 (Ala. 1990) (plaintiff knew crosstie was wet from rain and thus, as a matter of law, was on notice of the slippery condition); *Lawson v. Williams*, 514 So.2d 882, 883 (Ala. 1987) (plaintiff should have known that leaves accumulated after rain would probably be wet and slippery).

However, the case law in Alabama seems to present conflicting conclusions regarding when summary judgment is appropriate in such rainy-day cases. The Alabama Supreme Court has observed that a "fall caused by snow or rain is distinguishable from a fall resulting from some other object as is usual in a slip and fall case." *Gulas v. Ratliff*, 216 So.2d 278, 281 (Ala. 1968). "It is not the duty of

persons in control of [premises] to keep a force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several obvious reasons unnecessary to mention in detail." *Id.* (alteration supplied) (quoting *Cox v. Goldstein*, 53 So.2d 354, 357 (Ala. 1951)). "The shopkeeper is not required to stand constant vigil with a mop or towel on rainy days." *Boyd v. Wal-Mart Stores*, 710 So.2d 1258, 1260 (Ala.Civ.App. 1997) (citing *Gulas*, 216 So.2d at 281).

The plaintiff in *Cox* fell after taking a "few steps" past the entrance of a dress shop.  53 So.2d at 357.  The evidence showed that it had been raining for several hours, and that when the plaintiff stood up, she had muddy water on her skirt and hose. *Id*. The Alabama Supreme Court affirmed a verdict in favor of the dress shop, because the defendant had no duty "to keep a force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas," and because there was no evidence that it "did anything or omitted to do anything which storekeepers, of ordinary care and prudence, under similar circumstances do or omit to do for the protection of their patrons." *Id.*

Likewise, the plaintiff in *Gulas* fell after taking a "couple of steps" into a restaurant.  216 So.2d at 278.  It had been snowing and sleeting on the day of the accident, and there was melting snow and ice on the floor where the plaintiff fell. *Id.* at 279.  Specifically,

> [t]here were several spots of snow beside . . . [plaintiff] about as big as a silver dollar. These bits of snow were about ten to twelve in number. When she got up, there was some ice and dirty water on her coat that had the appearance of crushed ice. Her underclothing was damp where she had been sitting in ice. Her coat had some soil on it from dirty water and there was still some ice on her coat . . . . [T]here was no grease, oil, or other foreign substance, other than snow and water, on the restaurant floor.

*Id.* The Alabama Supreme Court affirmed a directed verdict in favor of the restaurant, because the defendant had no duty "to keep a force of moppers to clear the floor of snow brought in by incoming customers," and "did not breach any duty by failing to remove the snow." *Id.* at 281.

In *Terrell v. Warehouse Groceries*, 364 So.2d 675 (Ala. 1978), the Alabama Supreme Court squarely affirmed the rule that owners of premises are not required to employ a "force of moppers" to reduce slippage on rainy days. The plaintiff in *Terrell* fell approximately 25 to 30 feet from the entrance of a grocery store. *Id.* at 675-76. The floor of the store was slippery due to the presence of clear rainwater that "appeared to be tracked in by customers." *Id.* at 677-78. The trial court directed a verdict in favor of the store, and the plaintiff appealed on the grounds that "to exempt storekeepers from a duty of reasonable care based upon a 'force of moppers' rationale is inequitable since there are viable alternative methods of making a floor safe." *Id.* at 676. The Alabama Supreme Court affirmed the verdict, and reasoned that:

> When it rains, surfaces naturally become more slippery than usual–a fact with which a customer is sufficiently familiar. To require a storekeeper to keep a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rain water would impose an unreasonable standard of care and would, in effect, make him an insurer of the customer's safety. Of course, each case must be examined in light of its particular circumstances, and where there are *unusual accumulations of rain water* or other circumstances, due care may require that the storekeeper take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings.

*Id.* at 677 (emphasis added).

Plaintiff argues that the question of whether there was an "unusual accumulation" of water is a question for the jury. (Doc. 9, Plaintiff's Brief, at 10-12). For that proposition, she relies on *Boyd v. Wal-Mart Stores, Inc.*, 710 So.2d 1258 (Ala.Civ.App. 1997), *King v. Winn-Dixie*, 565 So. 2d 12 (Ala. 1990), and *Strahsburg v. Winn-Dixie Montgomery, Inc.*, 601 So.2d 916 (Ala. 1992). In *Boyd*, a customer fell when he slipped on water which had accumulated at a service desk located inside the store.

> In his deposition, Boyd said that he would consider the amount of water on the floor at Wal-Mart the day he fell to be unusual. Evidence also tends to show not only that water was in the doorway, where one would expect the floor to be wet on a rainy day, but that the floor was wet even in the area around the service desk. What constitutes an "unusual" accumulation of water is a fact question that should be answered by the jury. Boyd presented substantial evidence to create a question whether there was an unusual accumulation of rainwater on the floor.

710 So.2d at 1260.

One observation regarding *Boyd* is appropriate. *Boyd* itself draws an important distinction about the impact of the location of the rainwater because it notes the expectation that, on a rainy day, entrance areas will be wet. The offending water in *Boyd* was not located at the store entrance. Thus, the *Boyd* court's statement that what constitutes an "unusual accumulation" is a jury question cannot be generalized to situations involving accumulations of rainwater at a store entrance. *See Katrensky v. United States*, 732 F.Supp.2d 1194, 1200 (M.D.Ala. 2010) (also noting this distinction).

In *Katrensky*, the court noted the apparent conflict with other Alabama cases caused by *Boyd*, *King* and *Strahsburg*, stating:

> In *King v. Winn-Dixie of Montgomery, Inc.*, 565 So.2d 12 (Ala. 1990), Alabama's highest court concluded that evidence of rainwater on the floor at a store entrance was sufficient to create a question for a jury. In *Strahsburg v. Winn-Dixie Montgomery, Inc.*, 601 So.2d 916 (Ala. 1992), the court considered a rainy day fall near shopping carts at the front of the store. The plaintiff had just checked out and fell after returning his shopping cart to the front of the store. The Alabama Supreme Court concluded that the trial court erred in directing a verdict in favor of the defendant.
>
> > In the present case, Strahsburg testified, "[T]here was a lot of water on the floor because my pants were, if you want to say, close to sopping wet. I had blue jeans on and they were very wet." Although there was testimony from the store manager and the bagger that the floors were mopped as often as possible and that the warning signs were in place when Strahsburg fell, he testified that he did not see

> any warning signs in the area where he fell. The testimony from Strahsburg regarding the amount of water on the floor and his testimony that he did not see any warning signs posted created factual questions as to whether Winn-Dixie breached its duty of care to Strahsburg.

*Id.* at 919.

*Boyd* and *Strahsburg* are difficult to reconcile with other Alabama cases. In *Cox v. Goldstein*, 255 Ala. 664, 53 So.2d 354 (1951), the plaintiff fell at the entrance to a store.

> About the middle of the afternoon on New Year's Eve, 1947, the plaintiff, a widow of middle age, accompanied by another lady, entered the outer lobby or vestibule of the defendants' ladies' ready-to-wear store in Birmingham for the purpose of purchasing a dress. It was raining at the time and had been raining since 11:42 in the morning, the rainfall being described as from "light" to "moderate." The plaintiff was wearing shoes with leather soles and medium heels. After traversing a few steps into the entrance-way, the plaintiff's feet slipped forward and out from under her, and she fell upon the floor of the vestibule in a sitting position. When she arose from her fall her hose and clothing were found to be wet and muddy.

*Id.* at 355.

The *Cox* court found that this evidence, including testimony that the plaintiff had "muddy water all on the side of her skirt" and that it was "awfully wet" was held to be insufficient to create a genuine issue about the store's negligence. In *Gulas v. Ratliff, supra*, the plaintiff entered the restaurant on a snowy and icy day and fell "after taking just a couple of steps inside . . ." The court ruled for the defendant concluding that there was no evidence of an unusual accumulation of snow. In *Wal-Mart Stores, Inc. v. White, supra*, a customer entered the store on a rainy day, slipped and fell, breaking her left leg. Relying on

>*Cox*, *Gulas*, and *Terrell*, the court held that where the evidence showed only that the floor was just wet enough to be "slick," there was not sufficient evidence to create a genuine issue about an unusual accumulation even though the evidence also indicated that the plaintiff's clothes were wet when she got home. *Id.* at 616-17.
>
>The only evidence before the court is Irene Katrensky's testimony that before she fell, she did not see anything, including water, on the floor, but after the fall her pants were "wet." As *Terrell, supra*, makes clear, it is the plaintiffs' burden to show that an "unusual accumulation" of rainwater or other circumstances existed. The evidence which was submitted by the plaintiffs does not create a genuine issue about the existence of an unusual accumulation of water.
>
>In view of the seemingly conflicting precedents, it is the duty of this court to predict how the Alabama Supreme Court would rule on this question. *See Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997). After careful consideration of the issue presented and a close review of binding Alabama precedent, the court concludes that the plaintiffs are required but have failed to demonstrate a genuine issue of material fact about whether there was an "unusual accumulation" of rain water or the existence of other circumstances in this case. Therefore, summary judgment is appropriate because "absent an unusual accumulation or 'other circumstances,' the presence of rainwater on a floor is not a breach of due care." *White*, 476 So.2d at 618.

732 F.Supp.2d at 1200-01.

The only evidence that the plaintiff's fall was caused by water was her testimony that it was raining on the day she fell and that, after she got up, her "butt was wet." She later testified that she only noticed she was wet after she had left. Under these facts, the court concludes that plaintiff has failed to demonstrate a genuine issue of material fact about whether there was an "unusual accumulation" of

rain water or the existence of other circumstances in this case. Therefore, summary judgment is appropriate because "absent an unusual accumulation or 'other circumstances,' the presence of rainwater on a floor is not a breach of due care." *White*, 476 So.2d at 618.

Plaintiff also asserts that defendant's motion for summary judgment is due to be denied because it has failed to act with due care after voluntarily undertaking to act, even if under no duty to do so. The only voluntary undertaking by defendant in the record evidence is the placement of the mats at the front entrance to the store. However, plaintiff also claims that defendant was negligent for failing to put out a warning sign or adequately monitor the entrance.

Plaintiff notes that Alabama law recognizes the principle that liability to third parties can result from the negligent performance of a voluntary undertaking, citing, *Raburn v. Wal-Mart Stores, Inc.*, 776 So.2d 137, 139 (Ala.Civ.App. 1999) (citing *Barnes v. Liberty Mutual Ins. Co.*, 472 So.2d 1041, 1042 (Ala. 1985)).

As a general proposition of law, this is correct. However, in *Beasley v. MacDonald Eng'g Co.*, 287 Ala. 189, 249 So.2d 844 (1971), the Alabama Supreme Court noted that liability for the breach of a duty voluntarily undertaken is governed by *Restatement (Second) of Torts* § 324A (1965), which states:

> "'Liability to third person for negligent performance of undertaking. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> "'(a) his failure to exercise reasonable care increases the risk of such harm, or
>
> "'(b) he has undertaken to perform a duty owed by the other to the third person, or
>
> "'(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.'"

287 Ala. at 193, 249 So.2d at 847 (quoting *Restatement (Second) of Torts* § 324A). *See also Commercial Union Ins. Co. v. DeShazo*, 845 So.2d 766 (Ala. 2002).

Furthermore, defendant could only be held liable for negligently failing to warn plaintiff based on its voluntarily assuming a duty only if defendant's negligence increased the risk of harm to plaintiff. *Yanmar America Corp. v. Nichols,* ___ So.3d ___, 2014 WL 4851514 at *12 (Ala., Sept. 30, 2014).

> Section 324A(a) applies only to the extent that the alleged negligence of the defendant "exposes the injured person to a greater risk of harm than had existed previously." *Herrington v. Gaulden*, 294 Ga. 285, 288, 751 S.E.2d 813, 816 (2013) (quoting *Taylor v. AmericasMart Real Estate*, 287 Ga.App. 555, 559, 651 S.E.2d 754, 758 (2007)). Moreover, the "test is not whether the risk was increased over what it would have been if the defendant had not been negligent. Rather, a duty is imposed only if the risk is increased over what it would have been had the defendant not engaged in the undertaking at all. *Myers v. United States*,17 F.3d

890, 903 (6th Cir. 1994). Liability can be imposed on one who voluntarily undertook the duty to act only where the actor "affirmatively either made, or caused to be made, a change in the conditions which change created or increased the risk of harm" to the plaintiff. *Id. See also Patentas v. United States*, 687 F.2d 707, 717 (3d Cir. 1982) ("[T]he comment [c] to section 324A makes clear that 'increased risk' means some physical change to the environment or some other material alteration of the circumstances.").

*Yanmar America Corp., supra.*

There is no evidence that anything with regard to the placement of the mats, the failure to place a warning sign, or the failure to monitor the front entrance more closely resulted in an increased risk to plaintiff to any greater a degree than had defendant not undertaken any measures at all. Plaintiff's claim to the contrary is based on pure speculation and not on evidence in the record.

Defendant asserts that the danger presented by the water at the entrance to its store was an open and obvious hazard. In *Denmark v. Mercantile Stores Co.*, 844 So.2d 1189 (Ala.2002),the Alabama Supreme Court observed:

> A condition is "open and obvious" when it is "known to the [plaintiff] or should have been observed by the [plaintiff] in the exercise of reasonable care." *Quillen v. Quillen*, 388 So.2d 985, 989 (Ala. 1980). "The entire basis of [a store owner's] liability rests upon [its] superior knowledge of the danger which causes the [customer's] injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the [store owner] cannot be held liable." *Id.* (citation omitted).
>
> However, defendant's argument that the condition that caused plaintiff's fall was open and obvious is an affirmative defense, on which it bears

the ultimate burden of proof.  *See Ex parte Neese*, 819 So.2d 584 (Ala. 2001); *Furgerson v. Dresser Indus., Inc.*, 438 So.2d 732, 734 (Ala. 1983); *see also Hale v. Sequoyah Caverns & Campgrounds, Inc.*, 612 So.2d 1162, 1165 (Ala. 1992) ("the traditional common-law 'open and obvious danger' defense . . . completely bars recovery if the danger is known by, or is obvious to, the plaintiff") (Hornsby, C.J., concurring in the result); *Vick v. H.S.I. Mgmt., Inc.*, 507 So.2d 433, 435 (Ala. 1987) ("[T]he evidence, including evidence bearing on the defense of 'open and obvious danger,' viewed in light of the applicable substantive law, presents genuine issues of fact."); *Coggin v. Starke Bros. Realty Co.*, 391 So.2d 111, 113 (Ala. 1980); *Ford v. Bynum Livestock & Comm'n Co.*, 674 So.2d 600, 603 (Ala.Civ.App. 1995) ("dispositive issue [is] whether the evidence conclusively showed that [the plaintiff] knew of, and appreciated, a dangerous condition so as to give rise to the 'open and obvious danger' defense").

"Only '[w]hen there is no genuine issue of material fact as to any element of an affirmative defense, . . . and it is shown that the defendant is entitled to a judgment as a matter of law'" is a summary judgment proper. *Wal-Mart Stores, Inc. v. Smitherman*, 743 So.2d 442, 445 (Ala. 1999) (quoting *Bechtel v. Crown Central Petroleum Corp.*, 495 So.2d 1052, 1053 (Ala. 1986)).  "If there is a genuine issue of material fact as to any element of the affirmative defense, summary judgment is inappropriate." *Id.*

844 So.2d at 1194-95.

Defendant asserts that plaintiff testified that she was aware that rain water can be tracked into a store by customers.  (Doc. 6, Defendant's Motion for Summary Judgment, at 15, citing Doc. 6-2, Plaintiff's Depo., at 91).  Thus, it claims that she must have been aware of and appreciated the danger created by the rain.  However, plaintiff claims that she did not look down when she entered the store.  Therefore, she

claims she was unaware of the danger and the open and obvious defense does not provide a ground for summary judgment.

In either event, because summary judgment is due to be granted on another basis as discussed above, it is not necessary to address this issue and the Court declines to do so.

## B. Wantonness

Defendant also asserts that there is no evidence of wanton conduct and that the claim of wantonness found in Count Two of the complaint is due to be dismissed. Additionally, when determining if a defendant's actions constitute wanton conduct, it is important for the court to distinguish between wantonness and negligence.

> "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury . . . .
>
> "Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as . . . a conscious . . . act. 'Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.' *McNeil v. Munson S.S. Lines*, 184 Ala. 420, [423], 63 So. 992 (1913). . ."

*Tolbert v. Colbert*, 903 So.2d 103, 114-15 (Ala. 2004) (quoting *Ex parte Anderson*, 682 So.2d 467, 470 (Ala. 1996), quoting in turn *Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*, 510 So.2d 142, 145-46 (Ala. 1987)).  *See also Ex parte Essary*, 992 So.2d 5 (Ala. 2007) ("'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.  *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala. 1994)").

      In her initial brief in opposition to summary judgment, plaintiff asserted that she was unable to respond to defendant's argument seeking summary judgment with regard to the wantonness claim until she had been afforded the opportunity to depose one or more employees of the defendant.  For that reason, plaintiff asserted that she was filing a contemporaneous motion requesting additional time to complete discovery.  That motion was filed by plaintiff (Doc. 8) and granted by the Court.  (Doc. 10).  Plaintiff was given from that date, October 21, 2014, until January 16, 2015, to file her response to defendant's motion for summary judgment as to the wantonness issue.  *See* Doc. 10.  However, no further opposition to the motion for summary judgment as to this claim, or any other submissions or requests for more time, was filed by plaintiff.

There is nothing in the record evidence to reflect that any action by defendant constitutes wanton misconduct. Therefore, summary judgment is due to be granted as to this claim, as well.

## CONCLUSION

For the reasons explained above, defendant's motion for summary judgment is due to be granted, and all of plaintiff's claims are due to be dismissed with prejudice.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 17th day of June, 2015.

　　　　　　　　　　　　　　　　　　/s/ Harwell G. Davis, III
　　　　　　　　　　　　　　　　　　HARWELL G. DAVIS, III
　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE